Mr. Justice Merrick
delivered the opinion of the Court.
This is a bill filed to vacate a conveyance alleged to have been improvidently made by the complainant to the defendants without due advice and knowledge, upon a grossly inadequate consideration, and under circumstances as alleged, of fraud and misrepresentation.
The complainant, a single lady of advanced age, resided in Alexandria, Va., her brother resided in Washington and died here, seized of lot 39, square 545, somewhere about the year 1862, during the turmoils and confusions of the civil war, and, as a consequence of that, and the circumstances connected with the nature and character of the property, which was in a neglected portion of the city, it remained unoccupied and neglected for many years. During this period, the lot being below the grade of the street, stagnant water is said to have collected upon it, and in course of time it became a nuisance, so that it was filled up by the authorities, and what is called a nuisance-tax was levied against it to the amount of $203. The lot lay there abandoned and neglected, and apparently unknown for a great many years.
Another lot adjoining lot 39, and also inherited by the complainant from her deceased brother, was in exactly the same situation. It appears that a short time prior to the deed in question to the defendants, another party, having his eye upon a profitable adventure, went to the complainant, who was living in Alexandria, and represented to her that the property was worthless; that it was overburdened with taxes, a'nd had been sold therefor, and was of no value to her whatsoever, but that he would give her five dollars if *594 she would execute a deed of it to him. She was misled entirely by his statements as to the value of the property, and the circumstances connected with her title, and the legal force of the alleged tax liens upon it; and in the belief that it was of little or no value she was induced to transfer to him the lot for the nominal consideration of $5.
The defendants in this case are brothers — one of them is a real estate title ■ examiner. Learning of what had been done with this other lot, they went together to Alexandria to see this lady with reference to the lot in question. They called at her house and, one of them acting as spokesman, made similar representations to her, telling her that the property was “in a very bad way in regard to taxes,” and offering to give her $5 for a deed for it. She was without counsel, without knowledge. A man knowing the value of the property approached her, took advantage manifestly, from the testimony, of her impressions, as derived from her previous communications with the purchaser of the other lot, and under those circumstances she executed a deed to them for this nominal consideration.
It appears that, in point of fact, the alleged nuisance tax upon the property was notoriously invalid and illegal, and that fact was well known to the defendants when they sought the deed from her.
It is said that inasmuch as the bill avers imposition and misrepresentation, and the answer denies these charges, it is a case where the testimony is balanced, and consequently the complainant cannot recover.
Courts of equity do not weigh testimony in that manner. Where the testimony on one side is to a certain effect, but the testimony on the other side is to the contrary effect, and there are no circumstances surrounding 'the transaction which reflect light upon it, of course, if the testimony is balanced, the complainant cannot prevail. But it happens in chancery causes, as in all other causes, that the truth is oftentimes much more conclusively established by circum *595 stances and known facts than it can be by the testimony of •the parties themselves or by the written depositions. That seems to have been the case in the present instance. Here was property circumstanced in the manner I have indicated. The party in whom the legal title rested knew nothing whatsoever about it. The party who sought the conveyance of it was an expert and knew everything about it. He took advantage of the delusion or ignorance (which is the same thing) which she was laboring under in regard to the subject matter. Nor did he abstain altogether from misrepresentation. By his own statement he admits that he stated to her that the property “ was in a very bad way in regard to taxes,” and this added to the delusion that already existed in the m-ind of the complainant, resulted in his getting from her for the sum of $5 property which was worth anywhere between $200 and $500, a price so grossly inadequate as to shock the moral sense of any one to whom the facts are made known. The question is simply whether, in such a state of case, a court of chancery will afford relief? The rule is so plain on the subject that it is hardly necessary to refer to authorities. But as we have the authority of the Supreme Court of the United States in a very similar case, it is appropriate, perhaps, to refer to it. In the case of Graffam vs. Burgess, 117 U. S., referred to by counsel for complainant upon his argument and in his brief, it is said, at page 185:
“ It is a principle of law, as well as of natural justice, that greater consideration and care are due to persons known to be unable to take care of themselves, than to those who are fully able, tó do so. The driver of a team, seeing a child or a woman, or a person of known feeble intellect, in the street, is hound to exercise greater eare and diligence to avoid doing them harm than would be obligatory if it was a grown and capable man. In dealing with a man whose rights, without his knowledge, but which by due diligence he might know, are passing away by lapse of time into another’s *596 hands, the latter may, perhaps, justify himself in the eye of the law (though not in conscience) in observing a wary and crafty silence, so as to put his victim off his guard and bring him into his own power, whilst he would be perfectly inexcusable in taking such advantage of a woman, unskilled in business, and unused to the strategems which are sometimes resorted to by unscrupulous persons.”
After discussing the merits of the case and the general doctrines as to the inadequacy of any other relief except that afforded by a court of equity, this language is used with reference to fraudulent transactions, at page 192:
“ From the cases here cited we may draw the general conclusion that, if the inadequacy of price is so gross as to shock the conscience, or if, in addition to gross inadequacy, the purchaser has been guilty of any unfairness or has taken any undue advantage, or if the owner of the property, or parties interested in it, have been for any other reason misled or surprised, then the sale will be regarded as fraudulent and void, or the party injured will be permitted to redeem the property sold. Great inadequacy requires only slight circumstances of unfairness in the conduct of the party benefitted by the sale to raise the presumption of fraud.
Again, at page 194 of the same case, the learned judge delivering the opinion quotes as follows:
Mr. Kerr, in his treatise on Fraud and Mistake, says: “Inadequacy of consideration, if it be of so gross a nature as to amount in itself to conclusive and decisive evidence of fraud, is a ground for cancelling the transaction.” Chancellor Desaussure in the case of Butler vs. Haskell, 4 Desaussure, 651, 697, on the same subject, says: “I consider the result of the great body of the cases to be, that wherever the court perceives that a sale of property has been made for a grossly inadequate price, such as would shock a correct mind, this inadequacy furnishes a strong, and in general, a conclusive presumption, though there be no direct proof of fraud, that an undue advantage has been taken of *597 the ignorance, the weakness, or the distress and necessity of the vendor; and this imposes on the purchaser a necessity to remove this violent presumption by the clearest evidence of the fairness of his conduct.”
Now, in the light of these authorities, laying down the law so entirely consistent with the instincts of a right conscience, and applying them to the situation of the parties in this case, to which I have briefly adverted, it is impossible to escape the conclusion that the transaction demands imperatively that a court of equity shall grant the relief prayed for by the plaintiff; which is accordingly done.
The decree below is reversed, and a decree will be entered in favor of the plaintiff, annulling this deed.